UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

KMDA, Inc., a Minnesota corporation,

       Plaintiff,

   v.

Russell Gahagan, an individual; Nicholas Ackley, an individual; and Doc's Custom Crank Baits, LLC, a Wisconsin Limited Liability Company,

       Defendants.

Case No. _____

**COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff KMDA, Inc., by and through its attorneys, brings this action for copyright infringement, breach of contract, and related claims against Defendants Russell Gahagan, Nicholas Ackley, and Doc's Custom Crank Baits, LLC and states as follows:

## NATURE OF THE ACTION

1.  This copyright infringement, breach of contract, and tortious interference action arises out of Defendants' unlawful use of Plaintiff's proprietary designs on fishing lures in violation of Plaintiff's registered copyrights and improper competition in breach of binding, contractual agreements.

2.  In or around November 2021, Defendant Russell Gahagan sold pursuant to an asset purchase agreement (the "Asset Purchase Agreement") all assets owned in his prior fishing lure business, Salmon Candy Tackle, LLC, to Plaintiff, including all intellectual property rights.

3.      As part of the Asset Purchase Agreement, Defendant Gahagan agreed not to compete directly or indirectly with Plaintiff by engaging or participating in a business involved in the commercial manufacture, sale, or distribution of fishing lures for a defined period of time.

4.      Defendant Gahagan further agreed not to divert business or adversely affect the business of Plaintiff including the acquired Salmon Candy business or interfere with the contractual relations between the Plaintiff and its contractual partners, including Defendant Ackley, whom Plaintiff retained to paint proprietary lure designs on Plaintiff's lures.

5.      Defendant Gahagan further agreed not to directly or indirectly solicit vendors, such as Defendant Nicholas Ackley, nor prospective customers for the purpose of providing products or services that would cause them to reduce business with Plaintiff.

6.      Defendant Gahagan recognized that these restrictive covenants included in the Asset Purchase Agreement were reasonably necessary to protect Plaintiff's business interests in the purchased assets and that Plaintiff would suffer irreparable harm if these covenants were violated.  Defendant Gahagan thus agreed that Plaintiff would be entitled as a matter of right to a preliminary and permanent injunction prohibiting the violation of these restrictive covenants.

7.      Recently, Defendant Gahagan has worked in concert with Defendants Ackley and Doc's Custom Crank Baits, LLC to knowingly and willfully sell fishing lures that are copied from, derivative of, and substantially similar to Plaintiff's proprietary and

copyrighted designs in direct competition with Plaintiff and the business Defendant Gahagan sold to Plaintiff.

8.    Defendant Ackley was aware of Defendant Gahagan's restrictive covenants in the Asset Purchase Agreement and knowingly and willfully interfered with the restrictive covenants between Plaintiff and Defendant Gahagan.

9.    By these acts, Defendants collectively infringed Plaintiff's copyrights and breached or interfered with binding contractual obligations.  Defendants' misconduct violates the Copyright Act as well as state law principles of contract and equity.

10.    Plaintiff seeks injunctive relief, monetary damages in an amount to be proven at trial, and an award of costs and attorneys' fees.

## PARTIES

11.    Plaintiff KMDA, Inc. is a Minnesota corporation with a principal place of business at 505 2nd Avenue, Bovey, Minnesota 55709.

12.    Upon information and belief, Defendant Russell Gahagan is an individual residing in the State of Wisconsin.

13.    Upon information and belief, Defendant Nicholas Ackley is an individual residing in the State of Wisconsin.

14.    Upon information and belief, Defendant Doc's Custom Crank Baits, LLC is a Wisconsin limited liability company with a principal place of business at 1043 Indian Mound Road, Sheboygan, Wisconsin 53081.

## JURISDICTION AND VENUE

15.    This Court has federal subject matter jurisdiction over the claims in this action, which involves claims arising the Copyright Act, 17 U.S.C. § 501 *et seq.*  15 U.S.C. § 1121; 28 U.S.C. § 1331.  This Court further has supplemental subject matter jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367.

16.    The Court also has jurisdiction over the state law claims under 28 U.S.C. § 1332 because the lawsuit is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

17.    Personal jurisdiction is proper over Defendants because exercise thereof would not offend traditional notions of fair play and substantial justice as Defendants have purposefully availed themselves of this forum state, the cause of action arises from Defendants' activities here, and Defendants' actions have caused damage to Plaintiff, a Minnesota corporation, in the State of Minnesota.

18.    Specifically, Defendants purposefully and intentionally availed themselves of this forum state by importing, distributing, offering for sale, displaying, advertising, and selling infringing goods substantially similar to Plaintiff's copyrighted work; by creating and operating an interactive website that specifically interacts with residents of the State of Minnesota; and by physically distributing infringing goods to consumers in the State of Minnesota.

19.    Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). KMDA is incorporated in and is a resident of the State of Minnesota and maintains an office and transacts business within Minnesota.  Venue is also proper in this district under

28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the intellectual property and goodwill that is the subject of this action is located in this district.

## FACTUAL BACKGROUND

### *Plaintiff, its Business, and its Copyrights*

20.     Plaintiff KMDA, Inc. is a family-owned business based in Bovey, Minnesota, that specializes in the design, manufacture, sale, and distribution of fishing and hunting products for the avid outdoorsman.

21.     Plaintiff offers a comprehensive range of fishing equipment and accessories for both freshwater and saltwater fishing enthusiasts.

22.     Plaintiff designs and manufactures its own products, ensuring a unique selection tailored to various fishing activities.

23.     In or around November 2021, Plaintiff entered into the Asset Purchase Agreement to purchase all the assets of a fishing lure business named Salmon Candy Tackle, LLC ("Salmon Candy").  At the time, Salmon Candy was owned and operated by its sole member Defendant Gahagan.

24.     Salmon Candy agreed to sell all its assets to Plaintiff in the Asset Purchase Agreement, including all tangible personal property, intellectual property rights (including copyrights), existing inventory, and goodwill associated with Salmon Candy's business.

25.     The Asset Purchase Agreement included non-compete and non-solicitation covenants that prohibited Defendant Gahagan from directly or indirectly engaging or

participating in a business involved in the commercial manufacture, sale, or distribution of fishing lures within the United States for a period of five (5) years.

26.    The Asset Purchase Agreement also provided that Defendant Gahagan would be retained by Plaintiff as a contractor/consultant pursuant to a Consulting Agreement and would receive annual payments for his services.

27.    The Consulting Agreement included a Work Product provision that states that all materials prepared or created by Defendant Gahagan, including all discoveries, improvements, or concepts conceived in connection with his services under the Agreement, would remain the property of Plaintiff.

28.    The Work Product provision specifically stated that Defendant Gahagan assigned to Plaintiff all rights, title, and interest in copyrightable material created while performing services under the Consulting Agreement.

29.    The Asset Purchase Agreement has been amended several times, including the most recent amendment on or about May 15, 2025.  In that amendment, Plaintiff agreed to make its final payment for the purchased assets upon the final transfer of assets on or about June 15, 2025, and the parties agreed that the non-compete and non-solicitation covenants would extend from the final transfer of assets and final payment.

30.    The non-compete and non-solicitation covenants of the Asset Purchase Agreement remain in force.

31.    Plaintiff offers specialized fishing lures, including those branded as **Booger Nose**, **Megatron**, and **ICON** (collectively, the "Subject Lures").

6

32. Plaintiff's Subject Lures all feature unique colors and proprietary designs belonging to Plaintiff pursuant to the Asset Purchase Agreement.

33. Plaintiff is the owner of valid and subsisting United States Copyright Registration No. VA 2-485-391 for the **Booger Nose** fishing lure design registered February 23, 2026, evidence of which is attached as <u>Exhibit A</u>.



*Booger Nose, U.S. Copyright Reg. No. VA 2-485-391*

34. Plaintiff is the owner of valid and subsisting United States Copyright Registration No. VA 2-485-393 for the **Megatron** fishing lure design registered February 23, 2026, evidence of which is attached as <u>Exhibit B</u>.



*Megatron, U.S. Copyright Reg. No. VA 2-485-393*

35.     Plaintiff is the owner of valid and subsisting United States Copyright Registration No. VA 2-485-392 for the **ICON** fishing lure design registered February 23, 2026, evidence of which is attached as <u>Exhibit C</u>.



*ICON, U.S. Copyright Reg. No. VA 2-485-392*

36.     The Subject Lures are wholly original, and Plaintiff is the exclusive owner of all rights, titles, and interest, including all rights under copyright, in the Subject Lures.

37.     Plaintiff has published, displayed, and distributed the Subject Lures on Salmon Candy's website <www.salmoncandyfishing.com>.  Below are screenshots of the Subject Lures as marketed and offered for sale on Salmon Candy's website:







38.     Plaintiff also sells the Subject Lures to various brick-and-mortar retailers across the country as well through third-party online platforms, such as Scheels.com.

39.     The Subject Lures are among Plaintiff's most popular fishing lure designs.

*Defendants' Unlawful Conduct*

40.    Defendant Doc's Custom Crank Baits, LLC ("DCCB") is engaged in the business of manufacturing and selling fishing gears, including lures.  On information and belief DCCB's name was derived from Defendant Ackley's nickname, "Doc."

41.    On information and belief, Defendant Ackley is, or was, the sole member of DCCB and, on information and belief, presently serves as a director of DCCB.

42.    Defendant Ackley is listed as the Registered Agent on the corporate registration for DCCB on file with the State of Wisconsin.

43.    The address of DCCB's principal office is the same as the address listed for its registered agent, Defendant Ackley:  1043 Indian Mound Rd., Sheboygan, WI 53081.

44.    Defendant Gahagan has been and continues to be actively engaged with and/or assisting Defendant Ackley and DCCB in the manufacture, sale, and distribution of fishing lures, including the Subject Lures.

45.    On information and belief, Ackley owns and operates the e-commerce website located at <www.docscustomcrankbaits.com>, which sells various fishing gear, including lures.

46.    Defendants, through DCCB's e-commerce website, sell fishing gear, including lures, directly to consumers across the United States, including in Minnesota.

47.    Defendants manufacture, distribute, and offer for sale fishing lures that are virtually identical to the Subject Lures on a variety of lure designs, including those as shown in screenshots below from DCCB's website below (collectively, the "Infringing Lures"):







48.    The first exemplary Infringing Lure above (titled "Standard Booger Nose")

is virtually identical to Plaintiff's copyrighted **Booger Nose** design.

49.   The second exemplary Infringing Lure above (titled "8″ Flasher Docs Megatron") is virtually identical to Plaintiff's copyrighted **Megatron** design.

50.   The third exemplary Infringing Lure above (titled "8″ Flasher Chrome Icon") is virtually identical to Plaintiff's copyrighted **ICON** design.

51.   As can be seen from viewing and comparing the screenshots of the Subject Lures and the Infringing Lures, the designs of the Infringing Lures are substantially similar to and virtually indistinguishable from the copyrighted designs of the Subject Lures.

52.   Defendants have similarly copied several other original and creative fishing lure designs in which Plaintiff owns copyright and other intellectual property protection and goodwill.

53.   Plaintiff has not licensed its copyrights in the designs of the Subject Lures to Defendants.

54.   Defendants do not have Plaintiff's permission or authorization to create substantially similar or derivative designs of the Subject Lures.

55.   Defendants knew of, were aware of, and intentionally copied the designs of Plaintiff's Subject Lures to create the Infringing Lures.

56.   Defendant Gahagan had access to, and familiarity with, the Subject Lures both as a result of his prior ownership of Salmon Candy and his previous consulting relationship with Plaintiff.

57.   On information and belief, Defendant Gahagan was personally involved with the creation and design of the Infringing Lures, personally authorized the reproduction,

distribution, and public display of the Infringing Lures, and directly and materially benefits from same.

58.     Defendant Ackley had access to, and familiarity with, the Subject Lures while he was paid by Plaintiff to paint these designs on the subject lures for several years.

59.     On information and belief, Defendant Ackley was personally involved with the creation and design of the Infringing Lures; personally authorized the reproduction, distribution, and public display of the Infringing Lures; and directly and materially benefits from same.

60.     Not only did Defendants steal Plaintiff's copyrighted designs, they did so while also using Plaintiff's own trade names Booger Nose, Megatron, and Icon.

61.     Defendants DCCB and Ackley knew of, were aware of, and intentionally interfered with the non-compete and non-solicitation covenants of the Asset Purchase Agreement between Plaintiff and Defendant Gahagan.

62.     Specifically, Defendants DCCB and Ackley intentionally interfered by enlisting Defendant Gahagan to assist with the manufacture, distribution, and sale of the Infringing Lures and other competitive products in direct violation of the non-compete obligations under the Asset Purchase Agreement between Defendant Gahagan and Plaintiff.

63.     In a Facebook post, Defendant Gahagan shared a post from Defendant DCCB's Facebook page mentioning the release of "3 different flashers."  Defendant Gahagan wrote in his post:  "Fun to get my mind going again about salmon fishing and

salmon tackle creation.  Make sure you grab some of these tomorrow when doc drops them!

I'm sure him and I will continue to develop some new stuff but these WILL catch fish."



64.    In another Facebook post, Defendant Gahagan posted images of fishing lures

with the text:  "Head over to Doc's website and grab these before there gone and need to

be refilled!  Again im excited have the creative juices flowing and help my buddy grow his

brand."  Defendant Gahagan included a link to DCCB's website.



65.     Defendants have listed for sale, have sold, and are actively selling the Infringing Lures at trade shows and on its website to consumers across the United States, including in Minnesota.

66.     As a result of Defendants' actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and sale of the Infringing Lures and other competitive fishing lures.  Defendants have never accounted for or otherwise paid Plaintiff for its use of the copyrighted designs of the Subject Lures.

67.     Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

68.     Defendants acted knowingly and willfully in reckless disregard of Plaintiff's rights.

**COUNT I**
**Copyright Infringement of U.S. Registration No. VA 2-485-391 (Booger Nose)**
**(17 U.S.C. § 501)**
*All Defendants*

69.     The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.

70.     The Booger Nose design is an original work of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101 *et seq*.

71.     Plaintiff is the exclusive owner of rights under copyright in and to the Booger Nose design.

72.     Plaintiff owns a valid copyright registration for the Booger Nose design, evidence of which is attached as Exhibit A.

73.     Through Defendants' conduct alleged herein, including Defendants' reproduction, distribution, and sale of the Infringing Lure titled "Standard Booger Nose" and other similar Infringing Lures which are copied from, derivative of, and substantially similar to Plaintiff's copyrighted Booger Nose design, without Plaintiff's permission, Defendants have directly infringed Plaintiff's exclusive rights in the copyrighted Booger Nose design in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501 *et seq*.

74.     On information and belief, Defendants' infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the copyrighted Booger Nose design, and has enabled Defendants to illegally obtain profit therefrom.

75.    As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial.  Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendant's profits attributable to Defendants' infringing conduct alleged herein, including from any and all sales of the Infringing Lure titled "Standard Booger Nose" and products incorporating or embodying the same copyrighted design, and an accounting of and a constructive trust with respect to such profits.

76.    Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

77.    As a direct and proximate result of the Defendants' infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

78.    On information and belief, unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe the copyrighted Booger Nose design. Plaintiff therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

**COUNT II**
**Claim for Copyright Infringement of U.S. Registration No. VA 2-485-393**
**(Megatron)**
*All Defendants*

79.    The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.

80.     The Megatron design is an original work of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101 *et seq*.

81.     Plaintiff is the exclusive owner of rights under copyright in and to the Megatron design.

82.     Plaintiff owns a valid copyright registration for the Megatron design, evidence of which is attached as Exhibit B.

83.     Through Defendants' conduct alleged herein, including Defendants' reproduction, distribution, and sale of the Infringing Lure titled "8″ Flasher Docs Megatron" and other similar Infringing Lures which are copied from, derivative of, and substantially similar to Plaintiff's copyrighted Megatron design, without Plaintiff's permission, Defendants have directly infringed Plaintiff's exclusive rights in the copyrighted Megatron design in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501 *et seq*.

84.     On information and belief, Defendants' infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the copyrighted Megatron design, and has enabled Defendants to illegally obtain profit therefrom.

85.     As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial.  Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendants' profits attributable to Defendants' infringing conduct alleged herein, including from any

and all sales of the Infringing Lure titled "8″ Flasher Docs Megatron" and products incorporating or embodying the same copyrighted design, and an accounting of and a constructive trust with respect to such profits.

86.     Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

87.     As a direct and proximate result of the Defendants' infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

88.     On information and belief, unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe the copyrighted Megatron design. Plaintiff therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

**COUNT III**
**Claim for Copyright Infringement of U.S. Registration No. VA 2-485-392**
**(ICON)**
*All Defendants*

89.     The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.

90.     The ICON design is an original work of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101 *et seq*.

91.     Plaintiff is the exclusive owner of rights under copyright in and to the ICON design.

92.     Plaintiff owns a valid copyright registration for the ICON design, evidence of which is attached as <u>Exhibit C</u>.

93.     Through Defendants' conduct alleged herein, including Defendants' reproduction, distribution, and sale of the Infringing Lure titled "8″ Flasher Chrome Icon" and other similar Infringing Lures which are copied from, derivative of, and substantially similar to Plaintiff's copyrighted ICON design, without Plaintiff's permission, Defendants have directly infringed Plaintiff's exclusive rights in the copyrighted ICON design in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501 *et seq*.

94.     On information and belief, Defendants' infringing conduct alleged herein was and continues to be willful and with full knowledge of Plaintiff's rights in the copyrighted ICON design, and has enabled Defendants to illegally obtain profit therefrom.

95.     As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial.  Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendants' profits attributable to Defendants' infringing conduct alleged herein, including from any and all sales of the Infringing Lure titled "8″ Flasher Chrome Icon" and products incorporating or embodying the same copyrighted design, and an accounting of and a constructive trust with respect to such profits.

96.     Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

97.     As a direct and proximate result of the Defendants' infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

98.     On information and belief, unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe the ICON design.  Plaintiff therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

## COUNT IV
### Breach of Contract
*Defendant Russell Gahagan*

99.     The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.

100.    The actions of Defendant Gahagan, as set forth herein, constitute a breach of contract.

101.    On or about November 2021, Defendant Gahagan entered into the Asset Purchase Agreement with Plaintiff that was subsequently amended in writing several times, including as recently as May 2025.

102.    The Asset Purchase Agreement constituted a valid and enforceable contract between Defendant Gahagan and Plaintiff.

103.    Among other things, the Asset Purchase Agreement included non-compete and non-solicitation covenants that prohibit Defendant Gahagan, for a defined period of time and within a defined scope, from directly or indirectly engaging or participating in a

business involved in the commercial manufacture, sale, or distribution of fishing lures within the United States.

104.   Defendant Gahagan breached the terms of the Asset Purchase Agreement by, *inter alia*, actively engaging with and/or assisting Defendants Ackley and DCCB in the manufacture, sale, and distribution of fishing lures during the non-compete period.

105.   Plaintiff has satisfied any and all conditions precedent and has performed all relevant obligations required under the Asset Purchase Agreement.

106.   Plaintiff has suffered an injury as an actual and proximate cause of Defendant Gahagan's breach of the terms of the Asset Purchase Agreement.

107.   Plaintiff is therefore entitled to Judgment against Defendant Gahagan in an amount to be determined at trial.

108.   Plaintiff is also entitled to specific performance of the non-compete covenant in the Asset Purchase Agreement prohibiting Defendant Gahagan from directly or indirectly engaging or participating in a business involved in the commercial manufacture, sale, or distribution of fishing lures within the United States for the remaining period of his non-compete.

## COUNT V
### Tortious Interference with Contract
*Defendant Nicholas Ackley and Doc's Custom Crank Baits, LLC*

109.   The allegations of the preceding paragraphs are re-alleged as if fully set forth herein.

110.   Defendant Gahagan executed an agreement with Plaintiff that prohibited Gahagan from directly or indirectly engaging or participating in a business involved in the

commercial manufacture, sale, or distribution of fishing lures within the United States for a defined period of time.

111.   Plaintiff fulfilled all of its obligations pursuant to the Asset Purchase Agreement.

112.   Defendants Ackley and DCCB were aware of the Asset Purchase Agreement and Defendant Gahagan's non-compete covenant contained therein.

113.   Defendants Ackley and DCCB have induced and continue to induce Defendant Gahagan to breach his contractual responsibilities, thus interfering with the Asset Purchase Agreement and the assets and goodwill Plaintiff purchased for value, by working in concert with Defendant Gahagan to manufacture, sell, and distribute fishing lures within the United States through DCCB.

114.   Defendants Ackley's and DCCB's actions in inducing these breaches of contract were and are intentional, unjustified, illegal, and have been engaged in for the specific purpose of inducing breach of the non-compete covenants of the Asset Purchase Agreement.

115.   As a proximate result of Defendants Ackley's and DCCB's tortious interference with contract, Plaintiff has been damaged and has suffered actual damages such as financial loss of business opportunities and the expense of this lawsuit to enforce its contract rights; and Defendants have been unjustly enriched, in an amount to be determined at trial.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

A.     That the Court grant judgment in favor of Plaintiff on all counts in the Complaint;

B.     That the Court immediately and permanently enjoin and restrain Defendants and their agents, employees, successors or assigns, and all persons, firms and corporations acting in concert with them, from using, marketing, distributing, offering for sale, or selling the Infringing Lures, and from otherwise directly or indirectly infringing Plaintiff's copyrights, including but not limited to, reproducing, distributing, selling, or creating derivative works based upon Plaintiff's Subject Lures;

C.     That the Court enjoin and restrain Defendant Gahagan from directly or indirectly engaging or participating in a business involved in the commercial manufacture, sale, or distribution of fishing lures within the United States for the remaining period of his non-compete;

D.     That the Court award Plaintiff, at its election, its actual damages, lost profits, consequential damages, exemplary damages, statutory damages, disgorgement of profits, and any other damages allowable under law;

E.     That the Court award Plaintiff its costs and distributions of this action, including reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

F.     Award such other relief, including equitable relief, as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, KMDA demands a trial by jury of all issues so triable.


Dated:  March 4, 2026                    *s/Kurt J. Niederluecke*
                                         Kurt J. Niederluecke (MN Bar No. 0271597)
                                         Luke P. de Leon (MN Bar No. 0401756)
                                         FREDRIKSON & BYRON, P.A.
                                         60 South 6th Street, Suite 1500
                                         Minneapolis, MN  55402-4400
                                         Telephone:  (612) 492-7000
                                         Facsimile:  (612) 492-7077
                                         E-mail:  KNiederluecke@fredlaw.com
                                                      LdeLeon@fredlaw.com

                                         ***Attorneys for Plaintiff KMDA, Inc.***